# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BEN HENRY SCOTT (#94592)**                    **CIVIL ACTION NO.**

**VERSUS**                                                  **18-626-BAJ-EWD**

**KEITH TURNER, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 22, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BEN HENRY SCOTT (#94592)**                    **CIVIL ACTION NO.**

**VERSUS**                                      **18-626-BAJ-EWD**

**KEITH TURNER, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on a Motion to Dismiss ("Motion"),[1] filed by the sole remaining defendant, Keith Turner ("Turner").[2]  No timely opposition to the Motion has been filed.  As Plaintiff has failed to state sufficient facts to establish a plausible claim of retaliation, the undersigned recommends the Motion be granted, and that the only remaining claim in the suit be dismissed.

## I.    Background

Ben Henry Scott ("Plaintiff"), who is representing himself and is confined at the Dixon Correctional Institute ("DCI") in Jackson, Louisiana, filed this suit pursuant to 42 U.S.C. § 1983 against Turner, Michael Spangler ("Spangler"), Jonathan Criswell ("Criswell"), Brian Forster ("Forster"), and Shalanda Wells ("Wells") (collectively "Defendants").[3]  Although all Defendants and claims have been dismissed with the exception of Plaintiff's individual capacity retaliation claim against Turner for monetary damages,[4] because Plaintiff's retaliation claim against Turner

---

[1] R. Doc. 22.

[2] Plaintiff originally instituted this action against Keith Turner, Michael Spangler, Jonathan Criswell, Brian Forster, and Shalanda Wells.  All Defendants but Turner were dismissed via this Court's Ruling on March 10, 2020.  R. Doc. 16.  Though Turner was not dismissed pursuant to initial screening under 28 U.S.C. §§ 1915(e) and 1915A, the Court specifically noted that, while Plaintiff's claim against Turner was not so apparently frivolous as to warrant dismissal on screening, opinion was reserved as to whether the claim against Turner could withstand a motion to dismiss.  *See* R. Doc. 11, n. 62 & R. Doc. 16.

[3] R. Doc. 1.

[4] *See* R. Docs. 11 & 16.  The retaliation claim is also limited solely to the disciplinary report and adverse consequences associated with the finding of the "Mojo" cigarette.

is difficult to understand without context, background information of the full facts alleged in the Complaint is provided.

Plaintiff alleges that Defendants conspired to retaliate against him by filing false disciplinary reports that resulted in Plaintiff being placed in administrative segregation.[5]   The following facts are taken as true for purposes of this Motion:

On approximately November 17, 2017, Plaintiff was moved within the prison to a new compound.  On December 7, 2017, Criswell escorted Plaintiff to Turner's office, at which time Turner accused Plaintiff of selling "Mojo."[6]  Plaintiff says that he denied selling Mojo, and Turner looked to Criswell and stated "next time we hear about Offender Scott selling Mojo, you know what to do."[7]  Criswell answered in the affirmative, after which Plaintiff was allowed to leave the office.

On December 12, 2017, Criswell and Spangler escorted Plaintiff to Turner's office again.[8]  Turner again accused Plaintiff of selling Mojo, which Plaintiff denied.[9]  Thereafter, Plaintiff accused Turner of harassment, to which Turner replied "I'll give you harassment" and then, again, told Spangler and Criswell, "you know what to do."[10]  Plaintiff was then allowed to leave, but when he returned to his cell, he noticed his lockers were missing.[11]  Plaintiff turned around in an attempt to discuss with Turner the fact that his lockers were missing, but on the way to see Turner, Spangler stopped Plaintiff and informed Plaintiff that he was "being locked up for four pills

---

[5] R. Doc. 1, pp. 3-4.  Plaintiff alleges that the disciplinary charges violated his due process rights and that placement in administrative segregation violated his right to be free from cruel and unusual punishment.
[6] R. Doc. 1, p. 4.
[7] R. Doc. 1, p. 5.  Plaintiff also alleges that "you know what to do" is a type of code phrase used when prison personnel conspire against prisoners.
[8] R. Doc. 1, p. 6.
[9] R. Doc. 1, pp. 67.
[10] R. Doc. 1, p. 7.
[11] R. Doc. 1, pp. 7-8.

founded [sic] in [Plaintiff's] property."[12]  Plaintiff submitted to a drug test, which he passed, and was then placed in administrative segregation for possessing contraband including four pills and one Mojo cigarette.[13]

According to Plaintiff, the above facts show that Defendants conspired to retaliate against Plaintiff because he denied selling Mojo.[14]  Plaintiff states that the disciplinary reports issued were false[15] and that the disciplinary report regarding the pills found in Plaintiff's lockers was dismissed, although Plaintiff was found guilty and sentenced to extended lockdown for eighty days for possession of the Mojo cigarette.[16]  The first disciplinary report, for possession of pills, was allegedly dismissed because the report contained the handwriting of multiple individuals.[17] Plaintiff contends Forster attempted to cover up Spangler's part in the conspiracy of writing a false disciplinary report by filling out part of the disciplinary report to make it appear as though Forster was the author of the disciplinary report instead of Spangler.[18]  Plaintiff further argues that Spangler knew he may have a "problem" with the disciplinary report accusing Plaintiff of possession of the pills, which Plaintiff also contends were "planted," so Spangler issued a second disciplinary report, also false according to Plaintiff, for possession of the Mojo cigarette.[19]  With respect to the Mojo cigarette, Plaintiff contends Criswell ordered Wells to file the disciplinary report regarding the Mojo cigarette to cover up Criswell's part in the conspiracy to retaliate against Plaintiff.[20]

---

[12] R. Doc. 1, pp. 7-8.
[13] R. Doc. 1, p. 9.
[14] R. Doc. 1, p. 9.
[15] R. Doc. 1, p. 10.
[16] R. Doc. 1, p. 11.
[17] R. Doc. 1, pp. 12-13.
[18] R. Doc. 1, pp. 12-13.
[19] R. Doc. 1, pp. 12-16.
[20] R. Doc. 1, pp. 16-17.

Plaintiff goes on to allege that the timing of the searches--finding the Mojo cigarette after finding the pills--is suspicious.[21]  Plaintiff calls into question the circumstances surrounding each search, why the presence of officers differs in the reports, and why one search concluded before another.[22]  Plaintiff also asserts that Criswell planted the Mojo cigarette and orchestrated the conspiracy but provides no facts as to Criswell's motive.[23]  Plaintiff also finds it suspicious that, since the above events transpired, some Defendants have received promotions.

## II.    Law & Analysis

### A.  Standard of Review

In *Bell Atlantic Corp. v. Twombly*,[24] and *Ashcroft v. Iqbal*,[25] the Supreme Court clarified the standard of pleading that a plaintiff must meet to survive a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[26]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[27]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[28]  It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to

---

[21] R. Doc. 1, pp. 17-19.
[22] R. Doc. 1, pp. 18-24.
[23] R. Doc. 1, pp. 25-26.
[24] 550 U.S. 544 (2007).
[25] 556 U.S. 662 (2009).
[26] *Twombly,* 550 U.S. at 555.
[27] *Iqbal,* 556 U.S. at 678, *quoting Twombly*, 550 U.S. 544.
[28] *Id.*

relief.'"[29]  "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[30]

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."[31]  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"[32]  Moreover, the federal pleading rules simply require a "short and plain statement of the claim showing that the pleader is entitled to relief."[33] The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted.[34] Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation,"[35] or "naked assertions [of unlawful conduct] devoid of further factual enhancement."[36]

### B.  Retaliation[37]

Claims of retaliation by prison inmates are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution.[38] Accordingly, to prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse

---

[29] *Id.* at 679.

[30] *Id.* at 678 (internal quotation marks omitted).

[31] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[32] *Id.* (citation omitted).

[33] Fed. R. Civ. P. 8(a)(2).

[34] *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

[35] *Papasan v. Allain*, 478 U.S. 265, 286 (1986)

[36] *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

[37] Though Turner has also urged that he is entitled to qualified immunity with respect to the Eighth Amendment claim against him, the Court has already dismissed this claim. *See* R. Doc. 11, pp. 7-8, & 12 and R. Doc. 16.  Plaintiff's confinement in administrative segregation as punishment for alleged possession of the Mojo cigarette is relevant only to whether the alleged loss was greater than *de minimis* on the retaliation claim.  *See* R. Doc. 11, pp. 9-10.  An analysis of qualified immunity as to Plaintiff's cruel and unusual punishment claim is not necessary.

[38] *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995).

retaliatory action, greater than *de minimis,* was undertaken against the prisoner by the defendant, and (4) that there was causation, *i.e.,* that "but for" the retaliatory motive, the adverse action would not have occurred.[39] To pass the *de minimis* standard for a retaliatory act, a plaintiff must allege an adverse act that "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights."[40]

As an absolute prerequisite to a retaliation claim, the plaintiff must be able to demonstrate that he was engaged in a constitutionally protected activity.  In the present case, Plaintiff has not shown that he engaged in a constitutionally protected activity.  "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."[41]  Thus, a prisoner's First Amendment claim, "must be analyzed in terms of the legitimate policies and goals of the corrections system...."[42] According to Plaintiff's allegations, the activity for which he alleges he suffered retaliation was verbal, face-to-face confrontations with Turner asking Turner to move him back to his previous compound,[43] and questioning why Turner was harassing him.[44]  A face-to-face, verbal confrontation with prison officials is not protected speech sufficient to support a First Amendment claim because such an interaction presents "a danger of a disturbance and a disruption to institutional order and discipline,"[45]  Because Plaintiff's statements to Turner do not constitute protected activity, he fails to state a claim for retaliation.

---

[39] *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999).
[40] *Morris,* 449 F.3d at 686.
[41] *Pell v. Procunier,* 417 U.S. 817, 822 (1974).
[42] *Id.*
[43] R. Doc. 1, p. 5.
[44] R. Doc. 1, p. 7.  Based on Plaintiff's allegations, it appears he is arguing that his accusation of harassment is what motivated Turner's alleged particular motivation to retaliate against Plaintiff, as discussed below.  Accusing an officer of harassment is not protected speech.
[45] *Nunez v. Ramirez,* No. 09-413, 2010 WL 1222058, at *5–6 (S.D. Cal. Mar. 24, 2010) (an inmate's direct, face-to-face verbal confrontation with an officer presents a danger of a disturbance and a disruption to institutional order and

Further, Plaintiff does not allege that Turner performed the alleged retaliatory act; instead, Plaintiff alleges that Wells authored the disciplinary report.[46] There are also no allegations that Turner instructed Wells to write the disciplinary report. To the contrary, Plaintiff's allegations indicate that Criswell ordered Wells to write the report and that, apparently, the writing of the report regarding the Mojo cigarette was Spangler's idea.[47] The only allegations from which it may be inferred that Turner had anything to do with the issuance of the disciplinary report are Plaintiff's allegations of conspiracy, which have been dismissed by this Court.[48] Because Plaintiff failed to allege a conspiracy,[49] he also fails to allege that Turner performed any retaliatory act. Accordingly, Plaintiff's remaining claim against Turner, in Turner's individual capacity for retaliation, should be dismissed, and this entire case should be dismissed with prejudice.

As Plaintiff has failed to allege sufficient facts to establish that he was exercising or attempting to exercise a specific constitutional right, or that Turner intentionally retaliated against

---

discipline; therefore, it is not protected speech and cannot support a First Amendment retaliation claim). *See also, Morgan v. Moore*, No. 05-113, 2005 WL 1334621, at *2 (E.D. Tex. June 6, 2005) (citing *Freeman v. Texas Dept of Criminal Justice*, 369 F.3d 854 (5th Cir. 2004) (an inmate's statements made to an officer during an argument were not protected speech); *Sanchez v. Allen*, No. 13-25, 2013 WL 5829156, at *5 (E.D. Tex. Oct. 29, 2013), *aff'd*, 611 Fed.Appx. 792 (5th Cir. 2015) (openly criticizing an officer is not constitutionally protected speech that may support a retaliation claim); *Carl v. Griffin*, No. 08-4981, 2011 WL 723553, at *5 (S.D.N.Y. Mar. 2, 2011) ("The plaintiff's brief and isolated verbal [encounter with the defendant] does not constitute protected First Amendment speech [because] [t]o construe it as such would elevate every verbal exchange between a prison employee and a prisoner to the level of protected speech under the First Amendment.") (internal quotation marks and citation omitted); *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010) (a prisoner's face-to-face verbal confrontation about the conditions of his confinement was not protected speech); *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that prisoner's characterization of hearing officer as a "foul and corrupted bitch" violated prison regulation prohibiting insolent behavior and was not protected by the First Amendment); *see also, e.g., Brown v. Hannah*, 850 F. Supp. 2d 471 (M.D. Penn. 2012) (inmate did not have a constitutionally protected right in the prison setting to use inappropriate, disrespectful and derogatory language to a prison official, and therefore, filing misconduct report against inmate was not retaliation in violation of his First Amendment speech rights); *Turner v. Felzien*, No. 11-03033, 2013 WL 1093001, at *2 (D. Colo. Mar. 15, 2013) (holding that "insubordinate and derogatory comments made to various prison officials" was not protected by the First Amendment); *Thomas v. MCSO*, No. 09-0708, 2009 WL 1311992, at *3 (D. Ariz. May 12, 2009) (holding that calling an officer a derogatory name is not constitutionally protected conduct).
[46] R. Doc. 1, pp. 16-17.
[47] R. Doc. 1, pp. 12-17.
[48] *See* R. Doc. 16.
[49] *See* R. Doc. 16.

Plaintiff for the exercise of that right, Plaintiff's remaining individual capacity claim against Turner for monetary damages should be dismissed.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that the Motion to Dismiss,[50] filed by Keith Turner, be **GRANTED** and that this case be **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on February 22, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[50] R. Doc. 22.

8